**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

_____

UNITED STATES OF AMERICA,

     Plaintiff,

v.                                     Criminal No. 03-127 JC

MAURICIO MICHEL,

     Defendant.

## MEMORANDUM OPINION AND ORDER ON THE APPLICATION OF THE ARMED CAREER CRIMINAL PROVISIONS OF THE FEDERAL SENTENCING GUIDELINES

Defendant Mauricio Michel is before the Court for sentencing on the offenses of (1) felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2); (2) possession of unregistered firearms in violation of 26 U.S.C. §§ 5841, 5845(a)(2) and 5861(d); and (3) possession of a firearm not identified by a serial number in violation of 26 U.S.C. §§ 5845(a)(2) and 5861(i).  The United States seeks an enhanced sentence pursuant to 18 U.S.C. § 924(e) and the Armed Career Criminal provision of the federal sentencing guidelines at U.S.S.G. § 4B1.4.

Section 924(e) of Title 18, United States Code, provides for a fifteen year mandatory minimum sentence for someone who is found guilty of Section 922(g) and has three previous convictions by any court for a violent felony committed on occasions different from one another. U.S.S.G. § 4B1.4 states that a person who is subject to an enhancement under Section 924(e) is an armed career criminal.

**BACKGROUND**

Defendant Michel was convicted in a New Mexico state court on December 2, 1996 of two counts of aggravated assault on a police officer and one count of attempted armed robbery. The events that gave rise to the convictions all occurred on April 13, 1996.  At approximately 6:00 a.m. on that date, Officer Michael D. Frilot of the Lovington, NM Police Department observed a black camaro making a right hand turn from a stop sign without stopping.  Officer Frilot pulled the car over.  Defendant Michel was the driver of the car.  Officer Frilot approached the driver's side of the car and asked how the driver was doing.  He noticed that the driver appeared nervous and that the driver had his right hand placed tightly in between his legs.  Officer Frilot asked to see Michel's hands.  Michel pulled his right hand out from between his legs.  In Michel's right hand was a gun.  Michel cursed at Frilot and pointed the gun at him.  Frilot ran out of the way toward the back of Michel's car.  Michel drove off still pointing the gun at Frilot.

Frilot gave chase after getting back into his unit and contacting dispatch.  Michel, having gotten a head start, managed to lose Frilot for a short time.  Michel drove into the parking lot of an Allsup's convenience store.  He got out of his car and ran into the store.  He ran to the cashier, grabbed her at the neck, and told her to give him all her money.  When the cashier did not respond right away, Michel pulled out a gun and put it to the cashier's chest.  He then released her and told her again to give him all her money.  The cashier told Michel she had no money, and Michel began trying to open the cash register.  At that time, the cashier heard sirens.

Officer Frilot had spotted Michel's car in the Allsup's parking lot.  He and another officer pulled into the parking lot and got out of their vehicles.  After both officers were out of their vehicles, Michel ran from the store, got into his car and drove off.  Officer Frilot got back into his patrol car in order to continue pursuit of Michel.

2

Meanwhile, Officer Webb was driving his patrol car in the vicinity of the Allsup's when he heard Officer Frilot radio that a suspect in a black camaro had pulled a gun on him.  Officer Webb began approaching the area that the camaro had been seen approaching.  As Webb approached the Allsup's, Michel's car came out of an alley and headed toward Webb.  Michel crossed the center line to hit Webb head on.

As Officer Frilot returned to his vehicle at the Allsup's, he heard Officer Webb radio that he had Michel's vehicle stopped.  Officer Frilot and several other officers arrived at the scene of the collision between Webb's unit and Michel's black camaro.  Michel was ultimately apprehended and charged with aggravated assault of a police officer for pulling a gun on Officer Frilot, attempted armed robbery for trying to rob the Allsup's, and aggravated assault of a police officer for running into Webb head on.

The United States argues that the three convictions of December 2, 1996 qualify as three previous violent felony convictions committed on occasions different from one another for purposes of the enhancement in 18 U.S.C. §§ 924(e) and U.S.S.G. § 4B1.4.  Defendant objects to this enhancement.  First, Defendant argues that the Supreme Court decision in Blakely v. Washington, 124 S.Ct. 2531 (2004) precludes application of the enhancement in this case because a finding that the three convictions arise from felonies committed on occasions different from one another must be made by a jury beyond a reasonable doubt.  Second, Defendant argues that the three convictions arise from felonies that were not committed on occasions different from one another because they all occurred on the same day over a period of minutes in a single criminal episode, were all charged in the same criminal complaint, and were all sentenced in a single judgment.

**DISCUSSION**

I.      DOES THE SUPREME COURT DECISION IN <u>BLAKELY</u> PRECLUDE
APPLICATION OF THE ARMED CAREER CRIMINAL ENHANCEMENT?

Initially, I must note that, as of the date of the entry of this Memorandum Opinion and

Order, neither the Tenth Circuit nor the United States Supreme Court has held the Federal

Sentencing Guidelines to be unconstitutional.  Moreover, I am not convinced that the holding in

<u>Blakely</u> necessarily portends the demise of many sentence enhancements under the Federal

Sentencing Guidelines.  However, I need not address in this case the impact of <u>Blakely</u> because

<u>Blakely</u> and its predecessor Supreme Court cases make clear that the enhancement at issue

involves a traditional sentencing factor rather than an element of the offense.

In <u>Almendarez-Torres v. United States</u> the Supreme Court faced the issue whether

recidivism is an element of an offense to be stated in the indictment and proven to a jury beyond a

reasonable doubt, or whether it is a sentencing factor to be found by a judge.  523 U.S. 224, 239

(1998).  The Court concluded that recidivism is a sentencing factor.  <u>Id.</u> at 243.  Consequently,

the Court held that there was no constitutional requirement that a recidivism factor be stated in

the indictment and proved to a jury beyond a reasonable doubt.  <u>Id.</u> at 247.

Subsequent cases have called <u>Almendarez-Torres</u> into doubt.  <u>See</u> <u>Apprendi v. New</u>

<u>Jersey</u>, 530 U.S. 466, 487 (2000) (stating that the holding in <u>Almendarez-Torres</u> "represents at

best an exceptional departure from the historic practice that we have described").  However,

<u>Almendarez-Torres</u> has not been overruled, remains good law, and has essentially been affirmed

on its basic premise that recidivism is a traditional sentencing factor that does not implicate

constitutional concerns.  <u>See</u> <u>Blakely</u>, 124 S.Ct. at 2536 (quoting <u>Apprendi</u> for the general rule

4

that "Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."); Apprendi, 530 U.S. at 488, 490 (noting again that the holding in Almandarez-Torres rested on the conclusion that recidivism is a traditional sentencing factor, and holding that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."); U.S. v. Cooper, 375 F.3d 1041, 1052 n.3 (10th Cir. 2004) (noting that the federal "three strikes" law imposing a life sentence based on a defendant's commission of at least two prior violent felonies is not subject to the rule in Apprendi because the facts increasing the penalty beyond the statutory maximum are facts of prior conviction); U.S. v. Dorris, 236 F.3d 582, 587 (10th Cir. 2000) (noting that Almandarez-Torres has not been overruled).

Defendant recognizes that Blakely does not apply to the fact of a prior conviction but argues that the determination whether his three prior convictions arose from felonies that were committed on occasions different from one another is more than a finding of the fact of a prior conviction because it requires the Court to delve into the facts of the underlying offenses to characterize those offenses. This is an interesting argument, and one that has been raised recently before the Supreme Court. In Dretke v. Haley, 124 S.Ct. 1847 (2004), a habeas petitioner asked the Court to determine that the Court's precedents allowing a judicial determination of the fact of a prior conviction did not apply when, in addition to the fact of prior conviction, there was a finding that these priors were sequential. The petitioner sought a ruling that the finding that prior convictions were sequential was required to be submitted to a jury and found beyond a reasonable

doubt.  The Court declined to address the issue stating that "These difficult constitutional

questions . . . are to be avoided if possible."  Id. at 1853-54.

     While the Supreme Court has avoided the difficult constitutional issue presented here, I

believe Supreme Court and Tenth Circuit precedent, authority from other jurisdictions, common

sense and public policy guide this Court to the inevitable conclusion that the determination

whether Defendant's three prior felonies were committed on occasions different from one another

is not one that need be proved to a jury beyond a reasonable doubt.  The reasoning in

Almandarez-Torres was not limited to "the fact of a prior conviction" but spoke more broadly to

recidivism issues.  Here, the issue whether Defendant's three prior convictions stem from felonies

committed on occasions different from one another is a recidivism issue.

     The Tenth Circuit in Cooper, decided nearly one month after the Supreme Court issued its

opinion in Blakely, stated that the rule of Apprendi does not apply to a determination under 18

U.S.C. § 3559(c) that a Defendant has been convicted of at least two prior serious violent

felonies.  375 F.3d at 1052 n.3.  In making a determination of prior conviction under 18 U.S.C. §

3559, a court must often do more than count the number of  prior convictions; a determination

must be made that the prior conviction was for a serious violent felony.

     Other courts faced with the issue whether these broader determinations involving the

characterization of prior offenses are recidivism issues excluded from the rule of Apprendi have

answered in the affirmative.  In U.S. v. Henton, the Seventh Circuit found that the issue whether

prior convictions are serious violent or serious drug offenses for purposes of 18 U.S.C. § 924

need not be submitted to a jury and found beyond a reasonable doubt.  374 F.3d 467 (7th Cir.

2004).  In doing so, the court specifically noted that <u>Almandarez-Torres</u> treated recidivism issues as sentencing factors rather than as elements of an offense.

Common sense and public policy also dictate that the determination whether Defendant's prior convictions arise from felonies committed on occasions different from one another be treated as a sentencing factor rather than an element of the offense.  If this determination were to be treated as an element of the offense, then it would have to be stated in the indictment, submitted to the jury, and proven beyond a reasonable doubt.  Thus, in any case involving a determination such as the one to be made in this case, the jury would necessarily be made aware of a defendant's prior criminal conduct.  However, it has long been recognized that "the introduction of evidence of a defendant's prior crimes risks significant prejudice." <u>Almandarez-Torres</u>, 523 U.S. at 235.[1]  Thus, it defies common sense and public policy considerations to find that evidence of defendant's prior crimes must be admitted in a defendant's case and proved to a jury beyond a reasonable doubt.  I therefore conclude that the determination whether Defendant's three prior felonies were committed on occasions different from one another is a sentencing factor and appropriately determined by the Court based on a preponderance of the evidence.

II.    WERE DEFENDANT'S THREE PRIOR CONVICTIONS FOR VIOLENT FELONIES COMMITTED ON OCCASIONS DIFFERENT FROM ONE ANOTHER?

The Tenth Circuit has determined that the statutory reference in 18 U.S.C. § 924(e) to offenses "committed on occasions different from one another" "was intended to reach multiple criminal episodes distinct in time."  <u>United States v. Johnson</u>, 130 F.3d 1420, 1430 (10th Cir.

---

[1]Federal Rule of Evidence 404(b) would certainly permit the admission of evidence of a defendant's prior crimes if necessary to prove an element of an offense.  Additionally, if a defendant's prior crimes were an element of the offense rather than a sentencing factor, such evidence would certainly be more probative than prejudicial.

1997).  "Defendant's prior convictions must arise from separate criminal transactions."  United States v. Tisdale, 921 F.2d 1095 (10th Cir. 1990).  Predicate convictions for purposes of enhancement under 18 U.S.C. § 924(e) need not be the result of separate judicial proceedings. United States v. Green, 967 F.2d 459, 461-62 (10th Cir. 1992).

In Tisdale, three of a defendant's prior convictions were burglary convictions that occurred on the same date and were prosecuted together.  The defendant had broken into a shopping mall and burglarized three separate businesses within the mall.  The defendant argued that the three burglaries arose out of a single criminal episode and was therefore a single criminal transaction rather than three criminal episodes distinct in time.  The Tenth Circuit agreed with the district court that each of the three convictions arose from separate and distinct criminal episodes and could be considered as predicate offenses for enhancement under 18 U.S.C. § 924(e). Tisdale, 921 F.2d at 1099.  In reaching this conclusion, the Tenth Circuit distinguished the facts in Tisdale from those in United States v. Petty, 798 F.2d 1157 (8th Cir. 1986).  In Petty, the underlying convictions for enhancement under 18 U.S.C. § 924(e) arose from a single incident in which the defendant simultaneously robbed several people at the same business.  The Tenth Circuit noted that the underlying crimes in Petty were committed simultaneously in the same location while those in Tisdale occurred successively at three separate businesses.  Id. at 1098-99.

Defendant's underlying convictions in this case arose from three successive incidents in three separate locations.  Defendant first pulled a gun on a police officer during a traffic stop.  He then drove away from this location to a store where he attempted to rob a store clerk at gunpoint. He then drove from the store and hit a police officer head on.  Each of these incidents is a distinct criminal episode notwithstanding they occurred in close temporal proximity and were prosecuted

8

together.  Therefore, they are three prior convictions for violent felonies committed on occasions different from one another, and Defendant's sentence may be enhanced under 18 U.S.C. § 924(e) on the basis of these predicate prior convictions.

**CONCLUSION**

IT IS THEREFORE ORDERED that the Court adopts the Presentence Report and Guideline Applications without change.  Defendant is sentenced in accordance with the Judgment and Sentence filed concurrently with this Memorandum Opinion and Order.

UNITED STATES DISTRICT JUDGE